IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CYRUS L. BROOKS,

                 Plaintiff,                 OPINION AND ORDER

v.

                                                    20-cv-5-wmc

PAMELA SCHMIDT
and SARA FRY,

                 Defendants.

---

*Pro se* plaintiff Cyrus L. Brooks is proceeding to trial against defendants Pamela Schmidt and Sara Fry on Eighth Amendment deliberate indifference claims. He now seeks reconsideration of the court's opinion granting summary judgment in favor of Dr. Karl Hoffmann. (Dkt. ##79, 80.) For the following reasons, the court will deny the motion.

OPINION

Under Federal Rule of Civil Procedure 59(e), a court may reconsider a final judgment (1) based on newly discovered material evidence or intervening changes in the controlling law or (2) to correct its own manifest errors of law or fact to avoid unnecessary appellate procedures. *Harrington v. City of Chi.*, 433 F.3d 542, 546 (7th Cir. 2006); *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996). A "manifest error" occurs when a district court has engaged in a "wholesale disregard, misapplication, or failure to recognize controlling precedent" of material facts. *Burritt v. Ditlefsen*, 807 F.3d 239, 253 (7th Cir. 2015) (internal quotations and citations omitted). Even so, Rule 59(e) "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a

party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *Moro*, 91 F.3d at 876.

Plaintiff alleged that Dr. Hoffmann was deliberately indifferent to his back pain by failing to approve the Vicodin prescription he received after visiting the emergency room for a back injury and waiting until ten days later to order Tylenol #3. In concluding that Dr. Hoffmann was entitled to summary judgment, the court found no evidence suggesting he was even aware plaintiff had visited the emergency room for a back injury, nor that there was a prescription order awaiting his review, or even that he was at the institution when plaintiff returned with a Vicodin prescription. As the court also noted, plaintiff had other pain medications available to him even before Dr. Hoffmann prescribed the Tylenol #3, as well as ice and heat, an extra pillow, and a three-week, no-work or recreation restriction. Although plaintiff did not consistently take at least two of these medications (cyclobenzaprine and amitriptyline), he also failed to offer any evidence from which a reasonable jury could infer *Dr. Hoffmann* knew about plaintiff's refusal.

Plaintiff purports to dispute some of these conclusions on reconsideration, but none remotely establish newly discovered evidence or an intervening change in the law, nor any manifest error of law or fact. *First*, he suggests that the court incorrectly believed that he had taken Vicodin. Not so. Although the court remarked in its opinion that Dr. Hoffmann had prescribed Tylenol #3, "rather than allowing Brooks to continue taking the Vicodin prescribed at the emergency room" (dkt. #64 at 14), the court recounted in the fact section that correctional officers had taken the Vicodin from plaintiff upon his return from the hospital pending Dr. Hoffmann's approval (*id.* at 9). Thus, the court understood plaintiff's

2

argument to be that he went without pain medication for ten days following his return from the emergency room, and its analysis of plaintiff's claim against Dr. Hoffmann addresses that very assertion. (*Id.* at 15-16.)

*Second*, plaintiff also contends that Dr. Hoffmann knew he had been to the emergency room and prescribed Vicodin the day after plaintiff returned to the institution. In support, plaintiff attaches a copy of his discharge instructions signed by Dr. Hoffmann on January 26, 2015, indicating those prescriptions. (Dkt. #80 at 14-15.) While these instructions were attached to plaintiff's complaint (dkt. #1-1 at 4-7), he did not submit them for the court's consideration at summary judgment (*see* dkt. ##47, 49), nor did plaintiff reference it in his opposition brief (*see* dkt. #48). The court has no responsibility to comb through the entire record at summary judgment for documentation that could support a plaintiff's claim. Regardless, plaintiff notes that Dr. Hoffmann also signed off on the order to send him to the hospital and the order for cyclobenzaprine on January 26. (Dkt. #80 at 18.)

Although these documents suggest that Dr. Hoffman knew plaintiff had been evaluated at the hospital and been prescribed Vicodin the day after he returned to the institution, these documents also show that Dr. Hoffmann was aware that plaintiff had been prescribed cyclobenzaprine as well, *and* that he scheduled that medication to be provided for seven days. Moreover, after the first seven days, plaintiff admits he rarely took cyclobenzaprine. That Dr. Hoffmann decided to allow plaintiff to start with the cyclobenzaprine rather than a narcotic pain medication with a problematic history of being trafficked within prisons, *and* once he learned that plaintiff's pain had not resolved,

prescribed a narcotic, is simply not enough for a reasonable jury to find his exercise of medical judgment was "so far afield of accepted professional standards" as to support an inference of deliberate indifference. *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). To the contrary, as the court noted in its summary judgment opinion, medical providers in an institutional setting are due considerable deference in deciding what pain medications to prescribe to inmates and are not required to keep inmates pain-free. *See Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations.") Even a disagreement between doctors, without more, is not enough to establish an Eighth Amendment violation. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

Plaintiff also renews his contention that neither cyclobenzaprine nor amitriptyline, which were both available to him, could effectively address his pain until Dr. Hoffmann prescribed Tylenol #3.[1] In fact, plaintiff does not appear to consider these medications to be pain medications at all. However, plaintiff acknowledged in response to defendants' proposed findings of fact that these medications *are* used to address pain, even if they are not exclusively pain medications. (*See* dkt. #54 at ¶ 87 (cyclobenzaprine "relaxes muscles which could also lessen pain"); ¶ 91 (amitriptyline is "used at low dosages for pain, by DOC").) Plaintiff's *lay* opinions about these medications are insufficient to support a

---

[1] While plaintiff takes issue with the court citing online medical website guidance as to generally accepted uses of amitriptyline, the court may take judicial notice of such information, and in any event, amitriptyline is described in the record by defendants as "a neuropathic medication which would have helped with [plaintiff's] pain." (Dkt. #54 at ¶ 91.)

4

finding that Dr. Hoffmann was deliberately indifferent to his back pain by not prescribing something more until ten days after his return to the institution.

Finally, plaintiff argues separately that Dr. Hoffmann acted with deliberate indifference to his foot condition by failing to do more once the Special Needs Committee refused plaintiff's request for athletic shoes and custom orthotics. However, that is not the standard for deliberate indifference. Dr. Hoffmann accepted the podiatrist's recommendations that plaintiff should be allowed custom orthotics and be allowed to purchase supportive athletic shoes from an outside vendor, which he dutifully forwarded to the Committee for its review. That Dr. Hoffmann did not, as plaintiff suggests, also file a Class III request to the medical committee in Madison or otherwise challenge the Committee's denial, is not enough for a reasonable jury to find he ignored or mishandled any medical need for footwear. Quite the contrary, the evidence is that the remaining defendants intervened to prevent Hoffmann and two other providers from proceeding with their recommended treatment.

## ORDER

IT IS ORDERED that plaintiff's motion for reconsideration (dkt. ##79, 80) is DENIED.

Entered this 11th day of October, 2023.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge